IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

L.C. MORRIS                                                                    PLAINTIFF

v.                                        Civil No.13-cv-4059

PILGRIM'S PRIDE CORPORATION
and RANDY MCLELLAND                                               DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment (ECF No. 19) filed on behalf of the

Defendants Pilgrim's Pride Corporation and Randy McLelland.    Plaintiff L.C. Morris has

responded.  (ECF No. 24).  Defendants have replied.  (ECF No. 27).  The Court finds the matter

ripe for consideration.

## BACKGROUND

This case arises out of L.C. Morris's ("Morris") employment with Pilgrim's Pride

Corporation ("Pilgrim's Pride").  Morris began working for Pilgrim's Pride on June 10, 1981.  In

1988, Pilgrim's Pride promoted him to supervisor, and in September 2011, Pilgrim's Pride

transferred Morris to the Weldtron department where he supervised around eighty employees.

Morris's job duties in the Weldtron department included keeping the line running smoothly and

helping his employees with physical labor.   Randy McLelland ("McLelland") was the

superintendent over the Weldtron department and supervised Morris.

In June 2012, Morris began experiencing back pain.  He made an appointment with his

treating physician, and an MRI revealed four bulging disks.  His treating physician prescribed

him pain medication and advised him to see a neurologist.

On June 20, 2012, McLelland issued Morris his first disciplinary warning.  Specifically,

McLelland issued Morris a warning because Morris failed to complete paperwork which resulted

in the United States Department of Agriculture issuing a Non-Compliance Report to Pilgrim's Pride.

Subsequently, in the last week of June or the first week of July,[1] Morris informed McLelland of his back pain.  He told McLelland that he would try to work through the pain with the assistance of medication but asked if he could be placed on light duty to help cope with the pain.  McLelland allowed Morris to work in the office doing paperwork.  After working in the office for two weeks, Morris's back pain diminished enough that Morris could return to his normal duties on the line.  However, he continued to experience pain.

In August 2012, Morris planned a personal vacation.  Pilgrim's Pride required supervisors, like Morris, to request vacation by marking their vacation days on a calendar in their superintendent's office.  Morris signed the calendar on Friday, August 10, Monday, August 13,[2] and Tuesday, August 14.

Before leaving for his vacation, on August 9, Morris met with McLelland in McLelland's office.  Morris told McLelland that his "back was giving [him] all kinds of problems" and he "needed to have some type of leave or be off to . . . get [the] problem taken care of."  McLelland did not know the leave procedure for salaried employees so he told Morris he would speak with Human Resources and would get back with Morris later that day.  About two hours later, McLelland called Morris back into his office.  He told Morris that Human Resources said he had to use all his vacation before he could go on medical leave but he needed to speak with Human Resources to fill out the necessary paperwork before taking leave.

That same day, Morris visited the Human Resources Department.  When he arrived, he spoke with Sharon Peterson ("Peterson"), the manager of Human Resources.  Morris told

---

[1] In his deposition, Morris could not recall the exact date.
[2] August 13 is Morris's birthday, and Pilgrim's Pride employees receive a vacation day on their birthday.

Peterson that he was having back pain and he needed to talk to a surgeon about having a procedure.  Peterson told Morris once he saw the surgeon and determined how long he needed to be off, he should contact Leann Thrasher ("Thrasher") to fill out medial leave paperwork.

Morris then went to speak with Thrasher.  Morris first spoke with Thrasher about an employee he supervised.  Specifically, Morris needed to fill out paperwork concerning his employee's short-term disability leave.  He then spoke with Thrasher about taking leave for his back pain.  According to Morris, he told Thrasher "once I find out when I am going to have . . . surgery or if I'm going to have surgery, [I need] you to help me fill out my paperwork."  Thrasher told Morris that when he received the information about his surgery, she would help him complete the paperwork.

On Friday, August 10, Monday, August 13, and Tuesday, August 14, Morris took his scheduled vacation.  After his vacation, he did not return to work on Wednesday, August 15, Thursday, August 16, or Friday, August 17.  When Morris did not show up for work, McLelland went to Human Resources to see if Morris had notified them of his absences.  No one in Human Resources had received a call from Morris.  Pilgrim's Pride has a three-day no-call, no-show policy, which provides:  "[N]ot reporting to your supervisor and being off work for three consecutive days without notification is considered a no-call, no-show voluntary resignation."  Accordingly, because Morris did not report to work for three consecutive days, August 15 through August 17, Pilgrim's Pride terminated his employment.

After his termination, Morris initiated this lawsuit against Pilgrim's Pride and McLelland asserting that they violated the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") when they terminated his employment.  Morris further alleges that they wrongfully discharged him in violation of Arkansas public policy and committed the

state-law tort of outrage.  Pilgrim's Pride and McLelland filed the instant motion for summary judgment.

STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  A party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

### 1. FMLA Claims

Morris asserts that Pilgrim's Pride and McLelland violated his rights under the FMLA when they terminated his employment. The FMLA entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements. 29 U.S.C. § 2612(a)(1). Two subsections of the statute establish prohibited acts. Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or attempt to exercise" rights provided under the FMLA. The Act also makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).

The Eighth Circuit has recognized three types of FMLA claims from these two subsections. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The three types of claims are: (1) entitlement claims, or interference claims; (2) retaliation claims; and (3) discrimination claims. *Brown v. City of Jacksonville*, 711 F.3d 883, 889-91 (8th Cir. 2013) (citing *Pulczinski*, 691 F.3d at 1005-06; *Lovland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012)). Here, Morris does not specify which FMLA claims he pursues. Therefore, the Court will address each type of FMLA claim as it applies to the instant case.

### A. Entitlement Claim

Pilgrim's Pride and McLelland assert that Morris's FMLA entitlement claim fails because Morris did not provide Pilgrim's Pride with adequate notice of his need for leave.

5

Specifically, they argue that Morris only advised them that he may need leave in the future but did not inform them that the need was immediate.  Morris asserts that he did "everything in his power to get [Pilgrim's Pride] to assist him in putting him on the proper type of leave."

An entitlement claim requires an employee to show his employer has denied or discouraged the exercise of FMLA entitlements.  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).  To state an entitlement claim under the FMLA, an employee must have given notice to his employer of his need for FMLA leave.  *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 783-84 (8th Cir. 2013).   FMLA regulations require employees to provide 30-days notice of future leave if "practicable."  29 C.F.R. 825.302(a).  If there is a "change of circumstance" or "medical emergency," notice "must be given as soon as practicable."  29 C.F.R. § 825.302(a).  "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case."  29 C.F.R. § 825.302(b).  The Eighth Circuit has implemented a "rigorous notice standard for employees seeking to use FMLA leave for absences."  *Bosley*, 705 F.3d at 777.  The notice standard is not satisfied by "an indication that [an employee] might have to be absent some unforeseen time in the future."  *Bailey v. Amsted Indus. Inc.*, 172 F.3d 1041, 1046 (8th Cir. 1999).  Specifically, the Eighth Circuit has held that "knowledge that [an employee has] serious medical conditions, was under medical care, and needed to miss work from time to time" does not satisfy the notice requirement under the FMLA.  *Id.*

The Court concludes that Morris's entitlement claim fails for two reasons.  First, Morris failed to give Pilgrim's Pride and McLelland adequate notice of his need to take leave.  In his conversations with McLelland, Peterson, and Thrasher, Morris reported that he was going to the doctor to see whether he needed to have surgery.  He did not state that he was going to have

surgery nor did he request leave for the surgery.  Morris merely gave Pilgrim's Pride and McLelland "an indication that he might have to be absent at some unforeseen time in the future." *Bailey*, 172 F.3d at 1046.  As the Eighth Circuit concluded in *Bailey*, such indication does not satisfy the notice requirement under the FMLA.

Second, even if Morris gave Pilgrim's Pride and McLelland notice of a need for leave, Morris was not entitled to FMLA leave on the days immediately preceding his termination.  An employee is entitled to FMLA leave if he has "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1). Morris admits that during his absences from work on Wednesday, August 15, Thursday, August 16, and Friday, August 17, he did not undergo surgery.  He further admits that, on those days, he could have attended work and completed paperwork in the office as he did in June 2012.[3]  Thus, Morris was able to perform job functions and was not entitled to FMLA leave.  Accordingly, because he did not give notice of a need for leave and because he was not entitled to FMLA leave on the days preceding his termination, Morris's entitlement claim fails.

### B. Discrimination Claim

Pilgrim's Pride and McLelland argue that Morris's discrimination claim fails because Morris cannot establish a *prima facie* case of discrimination.  Specifically, Pilgrim's Pride and McLelland assert that Morris did not engage in an activity protected by the FMLA.   Morris asserts he engaged in protected activity when he informed McLelland that he may need medical leave for back surgery and when he used vacation time to deal with his back issues.

A discrimination claim arises when an employer takes an adverse employment action against the employee, and the adverse employer action was motivated by the employee's

---

[3] While the Court recognizes that Morris's primary job responsibility was supervising the line, Pilgrim's Pride allowed him to work in the office completing paperwork when he experienced back pain.

exercise of rights under the FMLA.  *Pulczinksi*, 691 F.3d at 1006.  Where direct evidence of discrimination is lacking,[4] the Eighth Circuit has used the *McDonnell Douglas* burden-shifting framework to evaluate FMLA discrimination claims.  *Id.* at 1007.  Under the framework, an employee must first establish a *prima facie case* of discrimination by showing: (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) the materially adverse action was casually linked to the protected conduct.  *Id.*  The Eighth Circuit has held that an employee has not engaged in protected activity when he does not provide sufficient notice of the need for FMLA leave.  *Hager v. Ark. Dept. of Health*, 735 F.3d 1009, 1016-17 (8th Cir. 2013).  Additionally, the Eighth Circuit has stated that FMLA benefits are contingent upon an employee having a serious health condition that makes him unable to perform the functions of his position.  *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011).

The Court concludes that Morris has not established a *prima facie case* for a FMLA discrimination claim because he cannot show that he engaged in protected activity.  As the Court concluded in addressing his entitlement claim, Morris failed to give notice of his need for leave and was able to perform his job functions on the days he was absent from work.  Thus, Morris did not engage in protected conduct, an essential element of his *prima facie* case.  Accordingly, Morris's FMLA discrimination claim fails.

### C.  Retaliation Claim

Pilgrim's Pride and McLelland assert that Morris has failed to allege a retaliation claim in his complaint.  A retaliation claim arises when an employer "discharge[s] or in any other manner discriminates against any individual for opposing any practice made unlawful by the FMLA." 28 U.S.C. 2615(a)(2); *Pulczinksi*, 691 F.3d at 1005.  For example, if an employer takes an adverse employment action against an employee for complaining about a violation of the FMLA,

---

[4] Morris does not assert there is direct evidence of discrimination.

the employer's action has given rise to a retaliation claim.  *Brown v. Diversified Distribution Sys., LLC*, No. 13-218 ADM/LIB, 2014 WL 2718760, at *6 (D. Minn. June 16, 2014).  In this case, Morris does not allege that he opposed any practice made unlawful by the FMLA. Accordingly, Morris has not alleged a FMLA retaliation claim.

2. ADA Claims

Morris alleges that Pilgrim's Pride violated his rights under the ADA.[5]  The Eighth Circuit recognizes two claims under the ADA: (1) reasonable accommodation claims; and (2) discriminatory disparate treatment claims.  *Fenney v. Dakota, Minn. & E. R. C.*, 327 F.3d 707, 711-12 (8th Cir. 2003).  The Court will first address Morris's accommodation claim.  Then, the Court will discuss Morris's discriminatory disparate treatment claim.

**A. Accommodation Claim**

Pilgrim's Pride asserts that Morris's accommodation claim fails because Morris never requested accommodation.  Morris argues that he requested accommodation when he spoke with McLelland, Thrasher, and Peterson about taking leave for his back surgery.

"An employer commits unlawful discrimination . . . if the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'"  *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (quoting 42 U.S.C. 12112(b)(5)(A)).  Generally, it is the responsibility of the individual with the disability to inform his employer that an accommodation is needed.  *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1217 (8th Cir.

---

[5] Morris additionally asserts that McLelland violated his rights under the ADA.  The Eighth Circuit has not ruled on whether individual liability exists under the ADA.  However, other courts have held that individual defendants cannot be held personally liable for violations of the ADA.  *Lewis v. City of St. Louis*, No. 4:13-cv-1165 CAS, 2014 WL 241526, at *2 (E.D. Mo. January 22, 2014).  *See also Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037-1038 (9th Cir. 2006); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).  Accordingly, the Court concludes that Morris cannot assert ADA claims against McLelland.

1999).  If a disabled employee requests accommodation, then the "employer must engage in an interactive process to determine whether reasonable accommodations are possible." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).  If reasonable accommodations are possible, the employer must accommodate the employee.  *Id.*  However, if an employee fails to make a request for accommodation, the employee has no duty to accommodate.  *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002).  The Eighth Circuit has held that an employee must provide his employer "with enough information that, under the circumstances, [the employer] can be fairly said to know" that the employee sought accommodation for his disability.  *Id.* at 962. (internal quotations omitted).

In this case, the Court concludes that a reasonable trier of fact would find that Morris did not provide Pilgrim's Pride with enough information that, under the circumstances, Pilgrim's Pride can fairly said to know that Morris sought accommodation for his back pain.  As the Court discussed in addressing Morris's FMLA claims, Morris reported that he was going to the doctor to see whether he needed to have surgery.  He did not state that he was going to have surgery nor did he request leave for the surgery.  A reasonable trier of fact could not conclude that this information was enough to notify Pilgrim's Pride that Morris needed immediate leave to accommodate his back pain.  Accordingly, Morris's ADA accommodation claim fails.

### B. Discriminatory Disparate Treatment Claim

Morris claims that Pilgrim's Pride discharged him because of his back issues.  Pilgrim's Pride argues that Morris's claim fails because it had a legitimate, nondiscriminatory reason for his termination: the three day no-call, no-show voluntary resignation policy.

To prove disability discrimination, an employee must show that: (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Tusing v. De Moines Indp. Comm. Sch. Dist.*, 639 F.3d 507, 517 (8th Cir. 2011). Once an employee has proven a *prima facie* case, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for adverse employment action, and if it does, then the employee must show that the proffered reasons is a pretext for disability discrimination. *Id.* To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a "'phony excuse.'" *Henderson v. Fort Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) (quoting *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

In this case, even assuming that Morris has established a *prima facie* case, the Court finds that his ADA discrimination claim fails because Pilgrim's Pride has proffered a legitimate, nondiscriminatory reason for terminating Morris's employment. Pilgrim's Pride terminated his employment pursuant to its three day no-call, no-show policy when Morris did not return to work for three consecutive days following his scheduled vacation  Morris does not dispute that he did not sign the calendar on the days he was absent and that signing the calendar was the procedure to take vacation. Further, Morris fails to offer sufficient evidence that Pilgrim's Pride's reason for his termination was a pretext for disability discrimination. Therefore, Morris's ADA discrimination claim fails.

3. Wrongful Discharge Claim

Morris alleges that he was discharged in violation of Arkansas public policy because he was denied protections of the FMLA and ADA. Pilgrim's Pride and McLelland assert that

Morris's wrongful discharge claim fails because he has not plead a violation of Arkansas public policy.  The Court agrees with Pilgrim's Pride and McLelland.  In Arkansas, an "at-will employee cannot be terminated if he or she is fired in violation of a well-established public policy of the State, but such public policy must be outlined in [Arkansas] statutes"  *Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671, 679 (2003).  In this case, Morris only alleges that Pilgrim's Pride and Morris denied him protections of federal laws, not Arkansas statutes.  Thus, Morris has not plead a violation of Arkansas public policy.  Accordingly, Morris's wrongful discharge claim fails.

4. Outrage Claim

Morris asserts that Pilgrim's Pride and McLelland committed the state-law tort of outrage because they knew Morris would suffer severe emotional distress if they terminated his employment.  Pilgrim's Pride and McLelland assert that Morris's outrage claim fails because Morris has not presented evidence that Pilgrim's Pride and McLelland knew that Morris would suffer severe emotional distress if they terminated his employment.

In Arkansas, the tort of outrage has four elements: "(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it."  *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007) (internal quotations omitted).  Arkansas has a narrow view of the tort of outrage and requires "clear-cut proof to establish" the elements.  *Id.*

12

In this case, the Court concludes that Morris has failed to establish a claim for outrage. Morris merely states that Pilgrim's Pride and McLelland "knew that [Morris] would suffer severe emotional distress" but offers no evidence of such knowledge.  Furthermore, Morris has not provided any evidence that the emotional distress he suffered was so severe that no reasonable person could be expected to endure it.  Accordingly, Morris has not established the requisite elements of an Arkansas outrage claim.

CONCLUSION

For the reasons stated above, the Court finds that the Motion for Summary Judgment (ECF No. 19) filed on behalf of Defendants should be and hereby is **GRANTED**.  Accordingly, Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.   A judgment of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 15th day of July, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge